IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| TRACY JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:06cv608-W.C. |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**I. INTRODUCTION**

Plaintiff Tracy Jones (hereinafter Plaintiff or Jones) applied for disability insurance

benefits and supplemental security income pursuant to Titles II and XVI of the Social

Security Act, 42 U.S.C. §§ 401, 1381 (2000), alleging that she was unable to work because

of a disability.  Her applications were denied at the initial administrative level.  Plaintiff then

requested and received a hearing before an Administrative Law Judge (ALJ).  Following the

hearing, the ALJ also denied the claims.  The Appeals Council rejected a subsequent request

for review.  The ALJ's decision consequently became the final decision of the Commissioner

of Social Security (Commissioner).[1]  See Chester v. Bowen, 792 F.2d 129, 131 (11th Cir.

1986).  The case is now before the Court for review pursuant to 42 U.S.C. §§ 405(g) and

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

1631(c)(3).  Pursuant to 28 U.S.C. § 636©, both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. Doc. #9, #10.  Based on its review of the record and the briefs of the parties, the Court affirms the decision of the Commissioner.

## II.  STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).

To make this determination,[2] the Commissioner employs a five step, sequential evaluation process.  See 20 C.F.R. §§ 404.1520, 416.920 (2006).

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1? [the *Listing of Impairments*]
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?

> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

disabled."

McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The Court's review of the Commissioner's decision is a limited one.  This Court must find the Commissioner's decision conclusive if it is supported by substantial evidence.  42 U.S.C. § 405(g); Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971).  A reviewing court may not look only to those parts of the record which support the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. Hillsman v. Bowen, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

### III. ISSUES

#### A.    *Introduction*

Plaintiff was thirty-four years old at the time of the hearing before the ALJ and has

---

[3]McDaniel v. Bowen, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI).  The same sequence applies to disability insurance benefits.  Cases arising under Title II are appropriately cited as authority in Title XVI cases.  See, e.g., Ware v. Schweiker, 651 F.2d 408 (5th Cir. 1981) (Unit A).

a high school diploma with two years of college education. Tr. at 244. Plaintiff's prior work experience includes work as a substitute teacher, daycare attendant, fast foods worker, cashier, sewing machine operator, production packer, and sales person. Tr. at 106-63. Following the administrative hearing, the ALJ concluded that Plaintiff had three severe impairments and did not have the residual functional capacity (RFC) to perform any relevant past work, but possesses a RFC to perform jobs existing in significant numbers in the national economy. Tr. at 17, 19-20.

B.   **Plaintiff's Claims**

Plaintiff presents two issues for review: (1) whether the ALJ improperly failed to consider and find severe all of Plaintiff's diagnosed impairments, and (2) whether the ALJ properly characterized Plaintiff's testimony about her care for her children. Plf.'s Brief in Opp'n to Commr's Decision at 5-8.

Employing the five step process, ALJ Intoccia found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date (Step 1)[4]; has severe impairments (Step 2); the impairments, considered individually and in combination, do not meet or equal in severity any impairment set forth in the listings (Step 3); and Plaintiff cannot perform any past relevant work (Step 4). Tr. at 20-21. Plaintiff had established her *prima facie* case.

---

[4]Under the "Findings" section the ALJ notes "[t]he claimant has not engaged in substantial gainful activity since the alleged onset date." Tr. at 20. In his analysis, however, the ALJ observed that Jones testified that she worked about three times a month from her onset date, earning about $100 a month or $42 a day, and that she was still engaging in that activity at the time of his decision. Tr. at 14, 17.

4

At Step Five, the ALJ states he evaluated Plaintiff's RFC and also received testimony from a vocational expert regarding the availability in significant numbers of other work Plaintiff could perform in the national economy. Upon consideration of the record, including the vocational expert's testimony, the ALJ determined Plaintiff possessed the RFC to perform jobs that exist in significant numbers in the national economy. Tr. at 19, 21. Consequently, the ALJ found Plaintiff has not been disabled since the alleged onset date. Tr. at 20-21.

## IV. DISCUSSION

### A.    Severe Impairments

Plaintiff argues that the ALJ erred when he failed to consider all of her diagnosed impairments. More specifically, Plaintiff maintains that the ALJ failed to consider and find severe the following impairments: rheumatoid arthritis, gastroesophageal reflux disease (GERD), irritable bowel syndrome (IBS), peptic ulcer disease, and gastric ulcers. See Plf.'s Mem. in Supp. Plf's Arg. at 5-7.[5] Defendant argues that the ALJ considered these impairments in his decision, but did not find them severe, as these impairments did not significantly affect Plaintiff. Def.'s Mem. in Supp. Commr's Decision at 3-6. The Court agrees with Defendant.

_____

[5]The Court notes that "peptic ulcer disease is an erosion in a segment of the [gastrointestinal] mucosa, typically in the stomach ([as a] gastric ulcer) or the first few centimeters of the duodenum ([as a] duodenal ulcer), that penetrates through the muscularis mucosae." The Merck Manual of Diagnosis and Therapy 120 (Mark H. Beers et al. eds., 18th ed. 2006). Thus, the Court does not treat these two impairments separately.

As stated above, the law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months.   42 U.S.C. § 416(I), 423(d)(1); 20 C.F.R. §§ 404.1505, 404.1509 (emphasis added).  Id.  Thus, in making a disability determination, an ALJ must consider each impairment alleged that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months.  Id.; Hurley v. Comm'r of Soc. Sec., 147 Fed. Appx. 103, 106-07 (11th Cir. 2005) (citing Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986)).  "'Where a claimant has alleged several impairments, the Secretary has a duty to consider the impairments in combination and to determine whether the combined impairments render the claimant disabled.'"  Hurley v. Comm'r of Soc. Sec., 147 Fed. Appx. at 107 (citing Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999)).

"The severity of a medically ascertained impairment must be measured in terms of its effect upon ability to work and not simply in terms of deviation from . . . bodily perfection or normality."  Id.  To be severe, an impairment must "significantly limit" plaintiff's ability to do basic work activities.  20 C.F.R. § 404.1520©.  "Basic work activities" are defined as the abilities and aptitudes necessary to do most jobs . . . [including] –

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
(2) Capacities for seeing, hearing, and speaking;
(3) Understanding, carrying out, and remembering simple instructions;

6

(4) Use of judgment;

(5) Responding appropriately to supervision, co-workers and usual work situations; and

(6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b).

With respect to a plaintiff's physical impairments, they can be "severe" only if they have more than a minimal effect on plaintiff's ability to "walk, sit, stand, lift, push, pull, reach, carry or handle, etc." Flynn v. Heckler, 768 F.2d 1273, 1275 (11th Cir. 1985). A diagnosis alone, however, is not a sufficient basis for finding that an impairment is severe. Sellers v. Barnhart, 246 F. Supp. 2d 1201, 1211 (M.D. Ala. 2002) (quoting McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986)). And, the burden of proving that a particular impairment is severe at step two rests with the claimant. See Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

Contrary to Jones' assertion, the Court finds that the ALJ considered in his analysis the following impairments: rheumatoid arthritis, gastroesophageal reflux disease (GERD), irritable bowel syndrome (IBS), and gastric ulcers. The ALJ explicitly stated that Jones was treated for GERD and IBS in March and June 2001, as well as rheumatoid arthritis in June 2001. Tr. at 15. He further explicitly indicated that Jones was treated for gastric ulcers in April 2002. Tr. at 14-15. The Court finds that the ALJ sufficiently considered these impairments when he specifically referred to them in his analysis. Brown v. Barnhart, 388 F.3d 1150, 1153 (8th Cir. 2004) (citing Forte v. Barnhart, 377 F.3d 892, 896-97 (8th Cir. 2004); Anderson v. Barnhart, 344 F.3d 809, 814 (8th Cir. 2003)).

7

Jones's claim that the ALJ improperly concluded that the four impairments identified above were not severe also fails. The medical evidence on the record reveals that Jones received intermittent treatment for the four impairments in question from February 2001 through April 2001, and in June 2001. Tr. at 14-15, 142-52, 153-154 (revealing that none of the impairments in question were assessed in May 2001), 155-56. Jones, however, worked during this time period. Tr. at 65, 96-97. The Court notes that there is no medical evidence in the record from May 2002 to March 2004, the month in which Jones applied for disability and asserted that her alleged onset of disability. Tr. at 45, 47.

In her application for disability, Jones only identified depression and obesity as her "illnesses, injuries, or conditions that limit[ed] [her] ability to work. Tr. at 45-49, 64. The medical evidence on the record from March 2004 through January 2006 reveals that, while Jones occasionally acknowledged pain in her joints, she did not identify nor was she diagnosed with or treated for any of the four impairments in question. Cf. Tr. at 85 (stating that her feet, legs, and back always hurt); Tr. at 205 (indicating Jones claimed joint pain in December 2004), with Tr. at 157 (denying in August 2004 having any back pain, stiffness, arthralgia, joint pain, diarrhea, indigestion, nausea, or vomiting) 15, 173-74 (identifying obesity, depression, and pregnancy as Jones' chief complaints in November 2004 and noting that Jones had no complaints of arthritis, no swelling, stiffness, or redness in her bones and joints), 207-10, 231 (denying in October 2004, August 2005, September 2005, October 2005, and December 2005 having any stiffness, back pain, or arthritis as well as nausea, vomiting,

8

diarrhea, constipation, abdominal cramping, indigestion, and heartburn).[6]  Moreover, at the hearing in January 2006, Jones testified that she was currently taking medications for high blood pressure, sleeping difficulties, and depression; she also admitted that she experienced chest and leg pains.  Tr. at 140, 249, 258; see also Tr. at 94 (indicating that Jones only was taking medication for depression in October 2004).  She denied having any other problems at the hearing.  Tr. at 262.

As a whole, the record evidence indicates that Jones was diagnosed with and received treatment for the four impairments identified above prior to her application for disability in March 2004.  A diagnosis, without more, is insufficient to render an impairment "severe." Sellers v. Barnhart, 246 F. Supp. 2d 1201, 1211 (M.D. Ala. 2002), (quoting McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986)).  The medical evidence on the record does not show any basis beyond the diagnoses themselves for finding that these problems significantly affected Jones' ability to perform basic work activities.  The decision of the ALJ is not due to be reversed on this ground.

### B.    Characterization of Plaintiff's Testimony

Plaintiff argues that the ALJ improperly failed to properly consider her daily living activities.  In particular, Plaintiff asserts that the ALJ's conclusion that she performs the care her three children need improperly characterized her testimony.  Plaintiff maintains that the

---

[6]The Court observes that the medical record from Dr. Ely Gordon dated October 12, 2004, indicates that Jones denied having diarrhea, but it also lists diarrhea in the assessment section of the record.  Tr. at 210.

ALJ overlooked her testimony that her sister and oldest child help her in providing care to the other children.  Plf.'s Mem. in Supp. Plf's Arg. at 7 (citing Tr. at 254).

The record indicates that, at the hearing, Jones' children were 15-years old, 10-years old, and 6-months old.  Tr. at 253-54.  Jones testified that she gets up and sends her two older children to school.  Id. at 254.  She further testified that on a regular basis, she tries to attend her 15-year old daughter's basketball games, helps her 10-year son with homework after school and remains "always" at home with her 6-month old all day.  Tr. at 259.  Jones did, however, state that her sister tries to help out with her 6-month old and that her sister comes over every day that Jones is home to pick up the baby.  Id. at 259-60.  Jones then stated that when she served as a substitute teacher and after the baby was born, her sister helped provide care for her baby.  Id. at 260.

The record further contains a daily activities questionnaire which Jones completed. This form indicates that Jones provides care for her children, a "hard task," but she and the children work together.  Tr. at 86.  Jones' mother also completed a daily activities questionnaire indicating Jones provides care for her children.  Tr. at 81.

By selecting certain discrete statements from Jones' testimony about her care of the children, the ALJ's blanket description is somewhat inaccurate.  In this respect, the Court agrees that the ALJ mischaracterized Jones' care for her children.  Neither party, however, disputes that the record supports the essence of the ALJ's statement:  Jones has three children, and she provides care for them.  Accordingly, the Court finds that the

mischaracterization does not detract from the ALJ's credibility determination that the objective medical evidence on the record outweighed Jones' testimony of disabling pain and functional restrictions. The ALJ based his credibility determination on a lack of objective medical evidence to substantiate Jones' asserted limitations–i.e., the medical opinions of and tests performed by Drs. Crawford, Gordon, and Jacobs regarding Plaintiff's functional abilities; Jones' admission that she provides care for her three minor children; Jones' testimony of disabling pain and functional limitations; Jones' medications; and Jones' testimony concerning her substitute teacher position and her efforts to look for work since the alleged onset date. Tr. at 18.[7] As the ALJ's credibility determination is not patently wrong, but rather, supported by the record, the Court must afford that determination deference. Rucker v. Chater, 92 F.3d 492, 496 (7th Cir. 1996).

## V. CONCLUSION

The Court has carefully and independently reviewed the record and concludes that the decision of the Commissioner is supported by substantial evidence and is due to be affirmed. A separate order will issue.

DONE this 7th day of March, 2007.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE

---

[7]The Court notes that Dr. Gordon is claimant's treating physician.